# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcus Hemington,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Board of Regents, et al.,<br><br>Defendants. | No. CV-11-00058-TUC-FRZ<br><br>**ORDER** |

Plaintiff Marcus Hemington ("Plaintiff") sued[1] Defendants the Arizona Board of Regents ("ABOR"), Melissa Vito ("Vito"), Vice President for Student Affairs at the University of Arizona ("University"), Keith B Humphrey ("Humphrey"), Assistant Vice President of Student Affairs at the University, and Jason Casares ("Casares"), Assistant Dean of Students at the University (collectively, "Defendants") alleging, *inter alia*, that Defendants violated his right to due process during an administrative disciplinary proceeding held by the University. Pending before the Court is State Defendant's Motion for Summary Judgment ("Motion") [Doc. 46]. Plaintiff has filed Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment ("Opposition") [Doc. 51]. Defendants have filed State Defendants' Reply in Support of Motion for Summary Judgment ("Reply") [Doc. 55]. Defendants have also filed Defendants' Request for Judicial Notice in Support of Motion for Summary Judgment ("Judicial Notice Request")

---

[1] Defendants removed the instant action to this Court based upon federal question jurisdiction pursuant to 28 U.S.C § 1441(b). *See* Notice of Removal of Action Under 28 U.S.C. § 1441(b) [Doc. 1].

[Doc. 44] as well as Defendants' Objections to Plaintiff's Controverting Statement of Facts and Objections to Plaintiff's Statement of Facts ("Objections") [Doc. 56]. Plaintiff has taken no position on Defendants' Judicial Notice Request. *See* Dkt. Both parties have requested oral argument which the Court will deny as the Court determines that the facts material to the Motion are undisputed and that the parties have had an adequate opportunity to discuss the law and evidence. *See* n.6, *infra; Lake at Las Vegas Investors Group v. Pa. Malibu Dev.*, 922 F.2d 724, 729 (9th Cir. 1991). The Court now issues its decision on Defendants' Motion.

**Introduction**

Plaintiff's First Amended Complaint [Doc. 8] alleges five causes of action. *See* Doc. 8. Count one alleges that Defendants Vito, Humphrey and Casares violated Plaintiff's "substantive and procedural due process" rights and is brought pursuant to 42 U.S.C. § 1983.[2] *See* Doc. 8 at p. 17, ll. 12-14. In the remaining counts of Plaintiff's First

---

[2] There are significant differences between a substantive due process challenge and a procedural due process challenge. *Gonzales v. City of Fife, Washington*, 2008 WL 2482010, at *6 (W.D. Wash. 2008). The due process clause "cover[s] a substantive sphere [ ], 'barring certain government actions regardless of the fairness of the procedures used to implement them.' " *Id.,* quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). This substantive component protects an individual from "the [government's] exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Id*., quoting *County of Sacramento*, 523 U.S. at 845-46. The fundamental requirement of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976), quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1148, 1191, 14 L.Ed.2d 62 (1965). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id*. at 334, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). A reading of Plaintiff's First Amended Complaint and his Opposition to Defendants' Motion leaves the Court with the impression that Plaintiff's due process claim is really only a procedural due process claim rather than both a substantive and procedural due process claim. This is because it seems clear to the Court that Plaintiff is challenging only the University's application of its hearing procedures as applied to him, rather than the University's exercise of power without any reasonable justification in the service of a legitimate governmental objective. However, as more fully set forth herein, regardless of whether Plaintiff is seeking to

Amended Complaint, Plaintiff alleges various causes of action predicated solely upon the acts which form the basis for count one. *See* Doc. 8 at pp. 17-19, ll. 18-4 (count two – breach of contract; count three - unlawful discrimination in violation of the Arizona Constitution; count four – negligence and gross negligence; count five – intentional infliction of emotional distress).

As more fully set forth below, the Court determines that Defendants are entitled to entry of summary judgment in their favor with respect to all of the claims alleged in Plaintiff's First Amended Complaint. Defendants are entitled to entry of summary judgment in their favor on counts two through five of Plaintiff's First Amended Complaint, as well as his claim that his substantive due process rights were violated, because the Court concludes that Plaintiff was required to prosecute these claims in the Arizona Superior Court when he sought judicial review of the University's administrative decision under Arizona's Administrative Review Act.[3] Because Plaintiff did not prosecute these claims at the time he sought judicial review of the University's administrative decision, the doctrine of *res judicata* bars Plaintiff from prosecuting them now. With respect to Plaintiff's procedural due process claim[4] the Court concludes that Plaintiff has failed to establish that there is a genuine issue of material fact regarding the adequacy of Arizona's Administrative Review Act which provided Plaintiff with a post-deprivation remedy for any alleged procedural due process violation that he may have suffered at the administrative level.

…

…

…

---

invalidate the University's administrative hearing procedures (substantive due process claim) and seeking to establish that his right to procedural due process was violated in the University's administrative process as applied to him (procedural due process claim), the Court determines that Defendants are entitled to entry of summary judgment in their favor on Plaintiff's entire due process claim.

[3] ARIZ.REV.STAT. § 12-901, *et seq*.

[4] (contained in count one of Plaintiff's First Amended Complaint)

**Preliminary Matters**

Defendants' Objections to Plaintiff's Statement of Facts

As stated above, along with their Reply, Defendants filed Defendants' Objections. *See* Doc. 56. Defendants' Objections is not authorized by the Local Rules as the Local Rules do not allow for a separate response to the non-moving party's statement of facts. *See Equal Employment Opportunity Com'n v. Swissport Fueling, Inc*., 916 F.Supp.2d 1005, 116 (D. Ariz. 2013), *citing B2B CFO Partners, LLC v. Kaufman*, 856 F.Supp.2d 1084, 1086-87 (D. Ariz. 2012). Local Rule of Civil Procedure 56.1(d), which permits the moving party to file a reply memorandum, does not permit the moving party to file a separate responsive memorandum to any additional facts in the non-moving party's separate statement of facts. *See Marceau v. International Broth. of Elec. Workers*, 618 F.Supp.2d 1127, 1141 (D. Ariz. 2009).

Instead, L.R.Civ.P. 7.2(m)(2) requires that "[a]ny response to the objection must be included in the responding party's reply memorandum for the underlying motion and may not be presented in a separate responsive memorandum." *Id*., *quoting* L.R.Civ.P. 7.2(m)(2). Furthermore, L.R.Civ.P. 56.1 "does not permit explanation and argument supporting the party's position to be included in the … statement of facts. Argument may be made in the response or reply brief on the motion for summary judgment, but within the page limits." *Id*., *quoting Pruett v. State*, 606 F.Supp.2d 1065, 1075 (D. Ariz. 2009). The Court will not consider Defendants' Objections in ruling on Defendant's Motion.

Defendants' Judicial Notice Request

Defendants filed Defendants' Request for Judicial Notice [Doc. 44] to which Plaintiff has not taken a position. *See* Dkt. In their Request for Judicial Notice, Defendants ask the Court to take judicial notice, pursuant to FED.R.EVID. 201, of the existence and content of certain documents[5] that are contained in Plaintiff's appeal of the

---

[5] Attached as exhibits to their Request for Judicial Notice are a number of exhibits which Defendants represent as being the administrative record of the University administrative proceeding as well as relevant portions of the record of the proceedings in the Arizona Superior Court. *See* Doc. 44 at ¶¶ 1, 3-14.

- 4 -

University's administrative decision to the Arizona Superior Court. *See* Doc. 44 at pp. 1-2, ll. 23-1. Defendants argue that judicial notice is appropriate because Arizona Superior Court files are matters of public record, and the proceedings and the filings therein are related to the issues raised in this case. *See Id.* at p. 2, ll. 4.

Generally, the court will not consider facts outside the record developed before it. *See U.S. ex rel. Robinson v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992), citing *Daly-Murphy v. Winston*, 837 F.2d 348, 351 (9th Cir. 1987). However, the court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Id.*, *quoting St. Louis Baptist Temple, Inc., v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (additional citations omitted.) Having reviewed the documents attached to Defendants' Request for Judicial Notice, the Court determines that it is appropriate for it to take judicial notice of the documents attached as exhibits to Defendants' Judicial Notice Request. The proceedings that were before the Arizona Superior Court are "directly related" to this action. The Court will take judicial notice of the existence and content of the documents that are attached to Defendants' Request for Judicial Notice.

**Facts**

The facts of this case are largely undisputed.[6] On October 28, 2008, a female student at the University ("Jane Doe") initiated sexual assault charges with the Tucson

---

[6] For example, in Plaintiff's Controverting Statement of Fact/Plaintiff's Separate Statement of Facts in Support of Response in Opposition to Defendants' Motion for Summary Judgment ("PSOF"), Plaintiff controverts only five (5) of the 217 statements of fact set forth by Defendants. *See* Doc. 52 at ¶¶ 28, 28, 45, 51, and 102. Plaintiff has not addressed Defendants' statements of fact numbers 103 through 217 and, as such, the Court deems Defendants' statements of fact numbers 103 through 217 to be undisputed. *Id.* at p. 9. *See* L.R.Civ.P. 56.1(b) ("Each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts shall, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts.")

Police Department against Plaintiff Hemington. Jane Doe alleged that, due to alcohol or other drug(s), she suffered a memory blackout during the evening she had spent with Plaintiff, and had been unable to give consent to a sexual encounter that had occurred between them at Plaintiff's off-campus apartment.

Because the alleged assault occurred off campus, the University Police Department referred the matter to the Tucson Police Department. On October 29, 2008, the University Police Department notified the Dean of Students Office that Jane Doe had reported she had been sexually assaulted by Plaintiff. Defendant Casares, Assistant Dean, was assigned to investigate the allegations for possible violations of the Student Code of Conduct. From October 29, 2008 to November 3, 2008, Casares conducted his initial investigation. Casares ultimately determined that there was a sufficient basis to believe that Plaintiff violated four provisions of the Student Code of Conduct[7], and informed Plaintiff of this in a letter dated November 3, 2008. In his letter, Casares provided Plaintiff with notice that a sexual assault complaint had been made against him, the name of the complainant, informed Plaintiff that he would be subject to an interim suspension[8] and required Plaintiff to appear to discuss the allegations within five (5) days as required by the University's disciplinary procedures. Plaintiff attended the meeting, with his father, and gave a full statement regarding the acts in question and provided names of witnesses to corroborate Plaintiff's version of events. In December 2008 Plaintiff engaged an attorney, Sherick, to represent him throughout the entire University disciplinary process.[9]

---

[7] Relevant here, provision 2 of the Student Code of Conduct prohibits endangering, threatening, or causing physical harm to any member of the University community; provision 15 prohibits violations of ABOR, University rules or applicable law governing alcohol; provision 17 prohibits off-campus conduct that a reasonable person would believe presents a danger to the health, safety or security of a member of the University community; and provision 23 prohibits engaging in any illegal sexual offense.

[8] (which would prohibit him from being on campus and attending University-sponsored activities)

[9] Both parties agree that Sherick aggressively defended his Plaintiff's rights in all phases of the University administrative process.

Between November 3, 2008 and February 17, 2009, Casares conducted an investigation into the allegations against Plaintiff as he was required to do as the assigned investigator. By letter dated February 17, 2009, Casares informed Plaintiff, "[b]ased on information gathered in this investigation, I find that you violated Student Code of Conduct prohibited item number 2, 15, 17, 23 on or about Thursday, October 23, 2008." Casares informed Plaintiff that the University was imposing a two (2) year suspension as a sanction for the above referenced violations. Plaintiff was also informed of his right to request a hearing before a University Disciplinary Hearing Board as required by the Student Disciplinary Procedures. On this same date, Casares met face-to-face with Plaintiff and Sherick. At this meeting Plaintiff was informed, *inter alia*, that because he had "continued to participate in the process" he would be allowed to remain on campus and attend classes pending resolution the matter.

Sherick gave notice that Plaintiff was exercising his right to appeal Casares' decision to a University Hearing Board composed of members selected from the University community. Thereafter, an administrative hearing was held at which Sherick gave an opening statement and closing argument, cross-examined the University's witnesses, made arguments regarding the University's evidence on Plaintiff's behalf, and presented witnesses, evidence and argument in support of Plaintiff's position. Sherick also objected to certain evidence that was not produced until the day of the hearing, and renewed objections he had previously made regarding the standard of proof in the University's administrative hearing.

After deliberation, the University Hearing Board issued a written advisory recommendation to Defendant Vito, the Vice President for Student Affairs, as provided for in the University's procedures. The University Hearing Board found that Plaintiff had violated the University's alcohol and drug policies[10] but found that there was insufficient evidence to reach the conclusion that Plaintiff had sexually assaulted Jane Doe and, as

---

[10] (provisions 15, 16 and 17)

- 7 -

such, determined that Plaintiff had not violated the more serious provisions[11] of the Student Code of Conduct. The Board recommended to Vito that Plaintiff's suspension be reduced to one (1) year.

Defendant Vito, exercising her prerogative under the University's disciplinary procedures, submitted additional questions which probed the basis for the University Hearing Board's conclusions. In her formal written decision, Vito rejected the Hearing Board's finding that Plaintiff had not violated the more serious items of the Student Code of Conduct, finding instead that it was more likely than not that Plaintiff had committed the alleged acts. As such, Vito reinstated Plaintiff's two (2) year suspension. At the time Vito issued her decision reinstating Plaintiff's suspension, Plaintiff was informed of his right to seek a rehearing or to appeal the University's decision to the Arizona Superior Court for review under Arizona's Administrative Review Act.

On August 13, 2009, Plaintiff filed his Complaint for Judicial Review/Request for Stay[12] wherein Plaintiff sought judicial review of the University's administrative decision in the Arizona Superior Court, Pima County. Plaintiff alleged a number of deficiencies in the University's administrative proceeding, including that "[t]he proceedings before the University of Arizona below violated Plaintiff Hemington's right to due process of law…" On December 17 and 18, 2009, after some prehearing activity, an evidentiary hearing on the merits of Plaintiff's appeal was held. At the two-day evidentiary hearing the Arizona Superior Court heard testimony from witnesses who testified at the University hearing and from witnesses who did not testify at the University administrative hearing. The Superior Court also admitted exhibits that were not admitted at the University administrative hearing.

On February 17, 2010, Judge Lee issued his Under Advisement Ruling on

---

[11] (provisions 2 and 23)

[12] On August 19, 2009, Superior Court Judge Kenneth Lee granted Plaintiff's request for a stay, pending appeal, on the enforcement of the two-year suspension. Thus, Plaintiff was allowed to attend class and academic functions on campus at all times during the University disciplinary process, from the initial findings in November 2008 through the conclusion of the appeal in Superior Court on February 17, 2010.

- 8 -

Plaintiff's appeal. Judge Lee reversed the University's determination that Plaintiff had violated provisions 2, 16, and 23 of the Student Code of Conduct, affirmed the University's determination that Plaintiff had violated provisions 15 and 17 of the Student Code of Conduct, vacated Plaintiff's two-year suspension from the University and remanded the case to the University for a redetermination of the appropriate sanctions for violating provisions 15 and 17 warning that "suspension of the Plaintiff for these violation would be arbitrary and capricious as these violations are very common among the student population."

**Summary Judgment Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* FED.R.CIV.P. 56(c). Substantive law determines which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

**Legal Analysis**

<u>*Res Judicata* Bars the Claims Contained in Counts Two through Five of Plaintiff First Amended Complaint and Plaintiff's Claim of a Substantive Due Process Violation</u>

Defendants' first argument in support of their Motion is that the doctrine of *res judicata* bars Plaintiff's claims. Defendants rely upon *Mason v. Arizona*, 260 F.Supp.2d 807 (D. Ariz. 2003) and *Olson v. Morris*, 188 F.3d 1083 (9th Cir. 1999). Plaintiff argues in his Opposition that since the University did not appeal the Arizona Superior Court ruling that reversed the University's administrative decision the Superior Court ruling is "*res judicata* in Hemington's favor." *See* Doc. 51 at p. 3, ll. 12-13. As explained below, the Court agrees with Defendants with respect to the causes of action alleged in counts

two through five of Plaintiff's First Amended Complaint as well as Plaintiff's claim that his substantive due process rights were violated.

The Court begins with the decision by the United States Court of Appeals for the Ninth Circuit in *Olson v. Morris*, 188 F.3d 1083 (9th Cir. 1999). *Olson v. Morris* held that a party's failure to appeal a final administrative decision makes that decision final and *res judicata*. *Olson*, 188 F.3d at 1086, citing *Hawkins v. State, Dept. of Economic Sec.*, 183 Ariz. 100, 103-04, 900 P.2d 1236 (1995); *Guertin v. Pinal County*, 178 Ariz. 610, 612, 875 P.2d 843 91994). Under the doctrine of *res judicata*, a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. *Id*., citing *Gilbert v. Board of Medical Examiners of the State of Arizona*, 155 Ariz. 169, 174, 745 P.2d 617 (1987).

The doctrine binds the same party standing in the same capacity in subsequent litigation on the same cause of action, not only upon facts actually litigated but also upon those points that might have been litigated. *Id*., citing *Gilbert*, 155 Ariz. at 174; *Hawkins*, 183 Ariz. at 103, 900 P.2d 1236. In Arizona, the failure to seek judicial review of an administrative order precludes collateral attack of the order in a separate complaint. If no timely appeal is taken, the decision of the board is "conclusively presumed to be just, reasonable and lawful." *Id*., quoting *Gilbert*, 155 Ariz. at 176, 745 P.2d 617. This principle applies even to alleged constitutional errors that might have been corrected on proper application to the court which has jurisdiction of the appeal. *Id*. The Ninth Circuit held, "If Olson had constitutional defenses to the Board's proceedings he had every right to raise them with the Board or on appeal in state court." *Olson*, 188 F.3d at 1086-87, citing *Gilbert*, 155 Ariz. at 174, 745 P.2d 617 (holding that an assertion of irregularity in the proceedings before the Board of Medical Examiners-that the board members were conspiring against him and were motivated to act for reasons other than protection of the public-could have been raised before the board and on appeal of the board decision to the superior court).

The case of *Dommisse v. Napolitano*, 474 F.Supp.2d 1121 (D. Ariz. 2007), *aff'd*,

340 Fed.Appx. 384 (9th Cir. 2009), is also instructive. In *Dommisse*, a physician (Dommisse) sought review of his censure issued by the Arizona Medical Board. The Arizona Superior Court affirmed Dommisse's censure. Thereafter, Dommisse brought suit in the United States District Court for the District of Arizona individually against board members and consultants alleging conspiracy and extrinsic fraud to censure him in violation of his constitution right. 474 F.Supp.2d at 1126. The District Court, in adopting in the report and recommendation of the assigned United States Magistrate Judge held, *inter alia*, that Dommisse's challenges to the Board's sanction were barred by the doctrine of *res judicata*.

Relying upon *Olson, supra*, *Dommisse* held that the doctrine of *res judicata* binds the same party standing in the same capacity in subsequent litigation on the same cause of action not only upon facts actually litigated but also upon those points that might have been litigated. 474 F.Supp.2d at 1128. *Dommisse* recognized that this principle of *res judicata* "applies even to alleged constitutional errors that might have been corrected on proper application to the court which has jurisdiction of the appeal." *Id*. *Dommisse* held,

> The constitutional issues that Dommisse advances in the instant action could have been brought before the Board or on appeal before the state court. Dommisse failed to do so and is precluded from litigating them now. The instant action is barred by *res judicata*. This is equally true for Plaintiff's claims of extrinsic fraud because he could have raised and resolved them in the state proceeding.

474 F.Supp.2d at 1128.

Similarly, in *Gorney v. Arizona Board of Regents*, 43 F.Supp.3d 946 (D. Ariz. 2014), the United States District Court for the District of Arizona adopted the report and recommendation of the assigned United States Magistrate Judge who determined, *inter alia*, that the former university employee's failure to appeal the university's administrative decision terminating him precluded the former university employee's action for wrongful termination, violation of 42 U.S.C. § 1983, retaliation, breach of contract, and tortious interference with contract. 43 F.Supp.3d at 961. *Gorney* also

recognized that "a party may also be precluded from litigating an issue against someone who was not a party to the original action, provided there was a full and fair opportunity to litigate the issue in the original action." *Id*., quoting *Gilbert*, 155 Ariz. at 175, 745 P.2d at 623. A plaintiff is precluded from filing an action against defendants who were not named parties to the administrative action where the pivotal issues have already been litigated and decided. *Id*., citing *Dommisse*, 74 F.Supp.2d at 1221; *Gilbert*, 155 Ariz. at 175, 745 P.2d at 617. (Additional citations omitted.)

In light of the foregoing, the Court concludes that Plaintiff's claim that his right to substantive due process was violated, as well as the claims that he makes in counts two through five of his First Amended Complaint, are barred by the doctrine of *res judicata*. As demonstrated by the case law cited above, Plaintiff was required to bring these claims at the time that he filed his complaint seeking judicial review of the University's administrative decision. The Court is not convinced by Plaintiff's argument that the Arizona Superior Court's decision vacating the University's administrative determination is "*res judicata* in his favor." The Court is aware that Plaintiff did make an allegation in his complaint for judicial review filed in the Superior Court that the University's administrative hearing process violated his "right to due process of law." *See* Doc. 44-1 at p. 9, ¶ 41. However, Plaintiff fails to address the fact that his claims for breach of contract, unlawful discrimination in violation of the Arizona Constitution, negligence and gross negligence, and intentional infliction of emotional distress were not brought in the Arizona Superior Court at the time he sought judicial review of the University's administrative decision. As explained above, these claims are now barred by the doctrine of *res judicata*.

With respect to Plaintiff's substantive due process claim, upon examination of the Superior Court's Under Advisement Ruling, it is clear that the Superior Court did not make any determination on the merits of Plaintiff's due process allegation[13] but, rather, determined that there was no substantial evidence to support a finding that Plaintiff

---

[13] Plaintiff's due process allegation was not made as a separate count in his complaint for judicial review. *See* Doc. 44-1 at p. 8 at ¶40.

violated provisions 2, 16, and 23 of the Student Code of Conduct. *See* Doc. 44-11 at pp. 20 and 26. Under ARIZ.REV.STAT. § 12-910(E), the Arizona Superior Court is required to affirm the agency action unless the court concludes "that the action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion." *See* ARIZ.REV.STAT. § 12-910(E). An examination of the Under Advisement Ruling issued by the Superior Court, in light of the scope of review under Arizona's Administrative Review Act, leads the Court to conclude that the proceeding before the Superior Court determined only whether the University's administrative decision was supported by substantial evidence and did not make a determination on the merits of any due process claim. *See* Doc. 52 at Ex. 31 (Under Advisement Ruling) at pp. 1-2 ("The Court is to determine whether the administrative decision is supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion."); at p. 3 ("There is no substantial evidence to support a finding that the Plaintiff violated Section 16 of the Student Code of Conduct."); and at p. 9 ("There is no substantial evidence to support a violation of Sections 2 and 23 of the Student Code of Conduct."). Plaintiff cannot now seek to advance a substantive due process argument having failed to develop this claim that he made in the Superior Court.

In light of the foregoing, the Court determines that Plaintiff is precluded, under the doctrine of *res judicata*, from bringing his substantive due process claim and the claims alleged in counts two through five of his First Amended Complaint under the doctrine of *res judicata*. As such, the Court will grant summary judgment in favor of Defendants with respect to these claims.

<u>Arizona's Administrative Review Act Provided Plaintiff with an Adequate Post-Deprivation Remedy for Any Alleged Procedural Due Process Violation</u>

With respect to Plaintiff's procedural due process claim, Defendants argue in their Motion and Reply that Arizona's Administrative Review Act provided Plaintiff with an adequate post-deprivation remedy for any alleged due process violation he suffered. Defendants rely upon *Goonewardena v. New York*, 75 F.Supp.2d 310, 325 (S.D.N.Y. 2007) and *Lowery v. Adams*, 344 F. Supp. 446, 453 (W. D. Ky. 1972). *See* Doc. 55 at p.

3, ll. 5-12. In his Opposition, Plaintiff Hemington partially agrees, stating, in relevant part, "[t]he University suggests that since Hemington has had a full and fair opportunity to present his grievances from a disciplinary proceeding to a court, that proceeding is 'a perfectly adequate post-deprivation remedy' for perceived due process violations at the agency level…This proposition is true as it relates to the suspension of Hemington." *See* Doc. 51 at p. 3, ll. 14-17 & 20. Plaintiff continues on to assert, however, that the Arizona Superior Court "lacked the power" to award him any damages resulting from his suspension and also "lacked the authority" to grant him any monetary award for his emotional distress or pain and suffering. Plaintiff argues, therefore, that he is entitled to seek an award of such damages in this Court in this action. *Id.* As explained below, the Court rejects Plaintiff's argument.

To start, Plaintiff states no authority for his position that the Arizona Superior Court lacked the power or authority to award him damages.[14] The Arizona Superior Court certainly could have awarded Plaintiff compensatory damages[15] had he raised the claims that he asserts in this action in the Superior Court. Furthermore, an examination of *Goonewardena v. New York, supra,* and its authorities, persuades the Court that Plaintiff was provided with an adequate post-deprivation remedy such that Plaintiff's procedural due process claim is precluded.

In *Goonewardena*, a college student brought an action against, *inter alia*, Hunter College, The City University of New York, and various college officials alleging, in part, violations of his right to due process. 475 F.Supp.2d at 325. The plaintiff's suit was filed after he had received a decision adverse to him at the administrative level and unsuccessfully appealed that decision pursuant to New York state law review procedures. *Id.* at 325. The District Court for the Southern District of New York began by noting that the due process clause requires that, "[a]t the very minimum … students facing

---

[14] The Court notes that in Plaintiff's opening brief filed in the Arizona Superior Court action, Plaintiff took the position that the "violations by the University … may be remedied only by the reversal of the suspension against Plaintiff Hemington." *See* Doc. 44 at Ex. 10 (Plaintiff's Opening Brief) at p. 14, ll. 19-21. (Emphasis added.)

[15] (assuming adequate proof)

suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Goonwardena*, 475 F.Supp.2d at 325, quoting *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). *Goonwardena* held that since the plaintiff availed himself of the right, under New York State law, to commence a proceeding in the New York Supreme Court challenging the school's determination and his subsequent suspension the plaintiff had a "perfectly adequate post[-]deprivation remedy" created by the state for perceived due process violations. *Goonwardena*, 475 F.Supp.2d at 325. *Goonwardena* relied upon *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996), which relied upon the United States Supreme Court decision in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *Goonwardena*, 475 F.Supp.2d at 325.

In *Hudson v. Palmer*, the United States Supreme Court held that there is no due process violation when an adequate state remedy is available because a state action is not complete until the state provides, or refuses to provide, an adequate remedy for a state actor's failure to comply with established procedures. *Hudson*, 468 U.S. at 533, 104 S.Ct. 3194. When a plaintiff alleges that he suffered from an unauthorized deprivation of procedural due process, and there is an adequate state remedy, the plaintiff has no cause of action under § 1983. *Id.* *Hudson* continued on to hold that the fact that the available state remedy is less than what a plaintiff might receive in a § 1983 action is not determinative of the adequacy of the state remedy. *Id.* at 535, 108 S.Ct. 1954. *Accord Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) ("Although the state remedies may not provide the respondent with all relief which may have been available if he could have proceeded under § 1983, that does not mean that state remedies are not adequate to satisfy the requirements of due process.") *See also Raditch v. United State*s, 929 F.2d 478, 481 (9th Cir. 1991) ("Mr. Raditch misunderstands his due process rights. A violation of procedural rights requires only a procedural correction…").[16]

---

[16] In § 1983 cases, a plaintiff can recover compensatory damages for a proven due

Here, Plaintiff agrees that Arizona's Administrative Review Act provided him with an adequate post-deprivation remedy in so far as his suspension was vacated and he was fully reinstated as a student at the University. *See* Doc. 51 at p. 3, ll. 20-21. As stated above, Plaintiff argues, however, that he is entitled to additional compensation for the alleged procedural due process violation because that the Arizona Superior Court was unable to award him monetary damages for his alleged emotional distress or pain and suffering. *See Id*. at pp. 3-4, ll. 20-1) ("…the Superior Court lacked the power, under Arizona law, to award any damages to Hemington resulting from his suspension, other than the award of attorney's fees. The [Arizona] Superior Court also lacked the authority to grant Hemington any monetary award for his emotional distress or pain and suffering. It is undisputed that Hemington was banished from any social activities on campus or any social functions off campus sponsored by his fraternity.")

As stated above, however, in light of *Hudson v. Palmer*, it is clear that although the available state remedy may provide less relief than what Plaintiff believes that he might receive in a § 1983 action is not determinative of the adequacy of the state remedy. In his Opposition, Plaintiff has failed to put forth any evidence from which this Court could conclude that there exists a genuine issue of material fact on the issue of the adequacy of Arizona's state law remedy, *i.e*., Arizona's Administrative Review Act. It is undisputed that Plaintiff utilized Arizona's state law remedy and gained relief under it.

For the foregoing reasons, the Court concludes that Defendants are entitled to entry of summary judgment in their favor on Plaintiff's procedural due process claim.

**<u>Conclusion</u>**

Plaintiff's claims in counts two through five of his First Amended Complaint, as well as his claim that his right to substantive due process was violated, are barred by the doctrine of *res judicata*. With respect to Plaintiff's procedural due process claim, the Court concludes that Arizona's statutory scheme for judicial review of administrative

---

process violation only if the deprivation was unjustified on the merits. If, after post-deprivation procedure, it is determined that the deprivation was justified, a plaintiff can recover only nominal damages for the due process violation. *Raditch, supra*, 929 F.2d at n.5, citing *Carey v. Piphus*, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54, 55 L.Ed.2d 252 (1978). (Additional citations omitted.)

decisions provided Plaintiff with an adequate post-deprivation remedy for any procedural due process violation that may have occurred at the University level.

Accordingly,

IT IS HEREBY ORDERED that State Defendants' Motion for Summary Judgment [Doc. 46] is **granted**;

IT IS FURTHER ORDERED directing the Clerk of the Court to enter judgment and close this case.

Dated this 1st day of July, 2015.

Frank R. Zapata
Senior United States District Judge